IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SALVADOR LONGORIA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.   12-cv-234-MJR-SCW |
| RANDY J. DAVIS, MARK PEYTON, CORY HARBISON, CHARLES DINTELMAN, | ) ) ) ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### I.   Introduction

This case is before the Court on a Motion for Summary Judgment (Docs. 46 & 47) filed by Defendants Randy Davis, Mark Peyton, Cory Harbison, and Charles Dintelman.   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** the motion for summary judgment (Docs. 46 & 47).

#### II.   Findings of Fact

**A.   Procedural Background**

On March 14, 2012, Plaintiff filed a Complaint alleged excessive force against Defendants Randy Davis, Mark Peyton, Cory Harbison, and Charles Dintelman (Doc. 1). Specifically, Plaintiff alleges that Defendants Dintelman and Davis ordered Defendants Peyton and Harbison to use excessive force on him while transporting him between correctional institutions (Doc.

9).[1] Plaintiff alleges that Defendant Dintelman signed a transfer order for Plaintiff to be transferred from Pickneyville to Lawrence (Doc. 1 at p. 1). Lawrence Correctional Center, however, denied Plaintiff's transfer. During the course of this transfer, Plaintiff alleges that Peyton and Harbison dragged Plaintiff out of his wheelchair violently injuring his back, joints, neck, head, shoulders, and spine, and placed him into a non-handicap vehicle (*Id.* at p. 2). He alleges that they twisted him "like an old rag" and that Defendants slammed him onto the hard surface of the armrest when placing him in the vehicle (*Id.* at p. 3). Plaintiff argues that Defendants were violent and hostile and rushing him in the transfer, only to have Plaintiff returned to Pinckneyville when the transfer did not go through (*Id.* at p.2). Plaintiff argues that Defendants' actions constituted excessive force.

In response to Plaintiff's Complaint, Defendants Randy Davis, Charles Dintelman, Cory Harbison, and Mark Peyton filed a motion for summary judgment, arguing that Plaintiff had failed to exhaust his administrative remedies. Defendants offer an affidavit from Sherry Benton, Chairperson with the Administrative Review Board (ARB) who searched the ARB record for grievances from Plaintiff regarding staff conduct or issues with a transfer filed since June 2010. Benton failed to locate any such grievances from Plaintiff (Doc. 47 Ex. A at ¶ 6). Defendants also point out that Plaintiff filed three grievances at Pinckneyville Correctional Center, relating to his transfer from Pinckneyville. The first, dated June 8, 2010, complained about being told he would be transferred to Lawrence Correctional Center and sought to stop the transfer (Doc. 47 Ex. B). The grievance was received by the counselor and the grievance officer and ultimately denied on August 9, 2010 and signed by the Chief Administrative Officer on August 23, 2010 (Doc. 47 Exs. B & C). Plaintiff also filed a grievance on July 29, 2010 about his being "turned down from Lawrence" on July 23, 2010 (Doc. 47 Ex. D). This grievance also complained about accessing his property after his

---

[1] Plaintiff's Complaint seems to allege that this transfer occurred on August 23, 2010 (Doc. 1 at p. 1) although his July 29, 2010 grievance indicates that he was transferred on July 23, 2010 (Doc. 47 Ex. D).

Page 2 of 2

failed transfer.  This grievance was also reviewed by the counselor and grievance officer and denied on October 1, 2010 with the Chief Administrative Officer signing off on the decision on December 1, 2010 (Doc. 47 Ex. D & E).  Defendants point out that neither the June 8, 2010 nor the July 29, 2010 grievance was received by the ARB and neither discuss the alleged excessive force.

Defendants do admit that one grievance, dated September 15, 2010 and labeled Grievance # 9-79-10, discussed the attempted transfer and the force used against him during the transfer (Doc. 47 Ex. F).  Plaintiff stated in that grievance that he was not issued clothes upon returning to Pinckneyville (*Id.*).  The grievance also stated that he was still hurting from being dragged out of his wheelchair and using excessive force when he was transferred to a non-handicap van (*Id.*).  This grievance was received by the counselor on September 16, 2010 with a response issued the same day (*Id.*).  The grievance officer received the grievance on September 23, 2010 and on October 18, 2010 it was recommended that the grievance be denied because Plaintiff received his clothing items, although it did not address the excessive force allegations (Doc. 47 Ex. G).  The Chief Administrative Officer signed the grievance on October 27, 2010.  Defendants point out that the ARB never received this grievance either (Doc. 47 Ex. A at ¶ 7).

Defendants argue that Plaintiff has failed to exhaust his administrative remedies because his grievances were never appealed to the ARB.  Defendants also argue that the first two grievances, dated June 8, 2010 and July 29, 2010, did not discuss the alleged excessive force as the June 8, 2010 was written prior to his attempted transfer and the July 29, 2010 grievance only dealt with missing property upon his return to Pinckneyville.  While the September 15, 2010 grievance is the only grievance dealing with the force used against Plaintiff, Defendants point out that Plaintiff failed to pursue his grievance to the ARB after exhaustin his remedies at the institutional level.

In the alternative, Defendants argue that they are entitled to summary judgment

because Plaintiff's September 15, 2010 grievance did not properly exhaust his excessive force claim. Defendants point out that the September 15 grievance focused mostly on obtaining clothing after his attempted transfer and only two lines mention that he was hurting from being violently dragged out of his wheelchair. Defendants point out, however, that other than a reference to "homosexual staff employee's", Plaintiff does not mention the date of this incident or the individuals responsible for the excessive force during his transfer. Defendants argue that the grievance does not reference the transfer at issue in this case, does not mention anyone involved or try to describe the officers, and, thus, does not provide the institution with an opportunity to determine the problem and try to resolve it.

Plaintiff's appointed counsel filed a Response to Defendants' motion (Doc. 67). Plaintiff's counsel argued that Plaintiff did not understand that he had to appeal to the ARB, given the language of 20 Ill.Admin. Code § 504.850 and Plaintiff's limited education. In his Response, counsel admitted that Plaintiff did not appeal his grievances to the ARB but pursued all of his avenues through the institutional level because he misunderstood the exhaustion requirements. In his Response, counsel also argued that the administrative process was unavailable to Plaintiff because Correctional Officer Harris took half of Plaintiff's legal documents from his legal box and used the space for medical supplies. Plaintiff pointed out that his July 29, 2010 grievance argued that Correctional Officer Harris was denying him legal access by taking his legal documents away from him. Plaintiff's counsel argued that Harris' actions interfered with Plaintiff's pursuit of his administrative remedies. Defendants filed a Reply (Doc. 69) arguing that an inability to understand IDOC's exhaustion requirements was not a proper excuse and Plaintiff had never alleged that prison staff lost his grievances, which, they acknowledge, would be a proper excuse for failure to exhaust.

Subsequent to the motion being fully briefed with the Court, Plaintiff sought to

withdraw his appointed counsel due to communication issues. The Court held a hearing on July 12, 2013 at which time the Court withdrew counsel from the case (Doc. 77). At that hearing, Plaintiff informed the Court that he did understand the exhaustion requirements but that he was prevented from fully exhausting his grievances with the ARB because of the actions of Correctional Officer Harris. Specifically, Plaintiff stated that he had the grievance prepared in his legal box and it was ready to go to Springfield, but that C/O Harris destroyed the grievance along with other legal papers (*Id.*). Given the factual issues created by Plaintiff's testimony, the Court set the matter for a *Pavey* hearing. The Court also found that Plaintiff admittedly had adequate knowledge of the administrative remedies process and could represent himself for purposes of the hearing on the narrow factual issue of whether Plaintiff was thwarted in his attempt to exhaust his administrative remedies.

**B.** *Pavey* **Hearing**

In accordance with *Pavey v. Conley*, the Court conducted an evidentiary hearing on July 30, 2013. *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008).** The crux of the issue before the Court was whether Plaintiff was thwarted in his attempts to fully exhaust his administrative remedies by having his grievances, which he sought to appeal to the ARB, destroyed before they could be sent to the ARB. Upon further review of Plaintiff's allegations at the hearing, the Plaintiff agreed he was claiming that C/O Harris destroyed his legal materials in July as there is a reference to these allegations in Plaintiff's July 29, 2010 grievance (Doc. 47 Ex. D). Plaintiff then changed his argument and asserted instead that he mailed his grievance to the ARB. Thus, the issue for the evidentiary hearing was narrowed further to the single factual issue of whether Plaintiff sent his September 15, 2010 grievance in the mail to the ARB.

Plaintiff testified at the evidentiary hearing that he mailed his September 15, 2010 grievance to the ARB. He testified that when he gets grievances returned, he puts them in a

pre-stamped envelope with other grievances and mails them to the ARB.  On cross-examination, Plaintiff testified that he put this grievance with other grievances about his health and an Officer Belfer and mailed them to the ARB.   He didn't recall when he received the other grievances that were mailed with the September 15, 2010 grievance.  He stated that he makes copies of the grievances and keeps track of when they were sent, as he mails out several copies when he doesn't get a response.  He mailed three or four grievances several times because he didn't get a response.   Plaintiff later changed his testimony, and stated that he mails the grievances as soon as he gets them back.   He testified that as soon as he received the grievance he mailed it to the ARB.  He states that he tries to mail the grievances right away so that they do not get lost.   He then changed his story again and stated that he saves them and mails grievances together, probably within a week of receiving them back from the institution.   He stated that the first time he sent it to the ARB, he sent it with other grievances that he was also appealing.  Then he sent it again.  He usually sends two or three copies and puts them in different mailboxes, sometimes using the mailbox in his unit and sometimes giving them to friends to mail in their units.

### III.    Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law."   *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").  **42 U.S.C. §1997e(a).**   That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).**   The Seventh Circuit requires strict

adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.     **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Longoria was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or

her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

B. Analysis

Here, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies. Plaintiff filed a grievance containing the alleged excessive force during his transfer on September 15, 2010 (Doc. 47 Ex. F). This grievance was reviewed by both the counselor, grievance officer, and signed by the Chief Administrative Officer (*Id.* at Exs. F & G). Plaintiff acknowledges

that the grievance was returned to him. However, the grievance was never submitted to the ARB. Defendants submitted an affidavit from Sherry Benton, Chairperson for the Office of Inmate Issues for the Illinois Department of Corrections (otherwise known as the Administrative Review Board ("ARB")) who testified that the ARB never received a grievance dated September 15, 2010 grievance (identified at 9-79-10) or any other grievance dealing with the force used against Plaintiff during his attempted transfer (Doc. 47 Ex. A at ¶¶ 6-7). The evidence before the undersigned suggests that the September 15, 2010 grievance was not fully exhausted as it was not sent to the ARB.

Plaintiff, however, argues that he did send the grievance to the ARB. He testified that as soon as he received the grievance back from the Chief Administrative Officer, he made copies and placed the grievance in a pre-stamped envelope and then into the mail to the ARB. However, the undersigned finds Plaintiff's testimony not to be credible. This is not the first story Plaintiff has told regarding what happened to his grievance. At the July 12, 2013 hearing, Plaintiff initially argued that his grievance was destroyed by C/O Harris. Plaintiff stated that he had the grievance in his legal materials and ready to go to the ARB, when C/O Harris went through his legal materials and discarded them in order to place Plaintiff's medical supplies in his legal box.[2] But Plaintiff's September 15, 2010 grievance could not have been destroyed by C/O Harris when he removed items from Plaintiff's legal box. Even assuming that Plaintiff's testimony is true, that C/O Harris did indeed go into Plaintiff's legal box and throw away materials in order to make room for Plaintiff's medical supplies, this event occurred in July 2010. Plaintiff's July 29, 2010 grievance alleges that C/O Harris recently[3] took legal materials out of his legal box (Doc. 47 Ex D). Plaintiff did not submit his grievance regarding

---

[2] Plaintiff's Complaint also alleges that C/O Harris and other employees destroyed his grievances while working on his property box (Doc. 1 at p. 6). He also alleges that his grievances were ignored.

[3] Plaintiff's grievance alleges that C/O Harris told Plaintiff he threw out his legal materials on July 30, 2010 which could not be possible as Plaintiff's grievance was filed one day prior, on July 29, 2010. Thus, the conversation Plaintiff alleges took place between he and C/O Harris had to have occurred prior to July 29, 2010. This, however, does not affect the undersigned's analysis as Plaintiff's grievance regarding his transfer was not written until September 15, 2010.

excessive force until September 15, 2010 and would not have received it back until after the Chief Administrative Officer signed off on it on October 27, 2010. Thus, the grievance could not have been part of the materials that were destroyed by C/O Harris in July 2010 and Plaintiff's testimony that he had the grievance in his legal box ready to send to the ARB when C/O Harris destroyed his legal material cannot be accurate.

At the evidentiary hearing, Plaintiff changed his narrative as to what happened to his September 15, 2010 grievance. Having been informed that the grievance could not possibly have been destroyed by C/O Harris in July, Plaintiff stated that he mailed the grievance to the ARB as soon as he received it back from the Chief Administrative Officer. Even this version of what happened to the September 15, 2010 grievance changed throughout the course of the evidentiary hearing. Plaintiff first testified that as soon as he received the grievance he placed it in a pre-stamped envelope and sent the grievance to the ARB. He then testified that he mailed the grievance with other grievances that he received, but admitted that the grievances were not all received on the same day. He testified that he put the September 15, 2010 grievance with other grievances about his health and an Officer Belfer and mailed them at the same time. He then later testified that as soon as he got the grievance he made copies and mailed it to the ARB. He stated that he makes several copies of the grievances and mails them to the ARB more than once. He also testified that some of the grievances he puts in his own mailbox and others he gives to friends in other units to mail. Plaintiff's changing narratives, however, are contradictory. Plaintiff cannot have mailed the grievance out as soon as he got it, but then also waited and sent the grievance in an envelope with other grievances. His testimony at the evidentiary hearing also contradicts his earlier testimony that he was prevented from sending the grievance to the ARB because it was destroyed by C/O Harris with his legal materials. Given Plaintiff's multiple, inconsistent versions of what happened to his grievance, the Court finds that Plaintiff is not credible

and his testimony is unreliable.

Thus, what the undersigned is left with is the fact that Plaintiff submitted his grievance to every required person at the institutional level, but the grievance never made it to the ARB. It is possible that Plaintiff lost the grievance in his cell, as he testified is apt to happen if he does not mail out the grievances immediately, or he could have given it to a friend in another unit to mail and that person failed to do so. Plaintiff did testify that he often gave grievances to inmates in other units to mail out. Whatever the reason, the Court discredits Plaintiff's testimony that he mailed the grievance to the ARB and **FINDS** that Plaintiff failed to submit the September 15, 2010 grievance to the ARB. This failure to properly appeal his grievance to ARB constitutes a failure to exhaust. *See Pozo v. McCaughtry*, **286 F.3d 1022, 1024 (7th Cir. 2002)(Prisoners failure to take timely administrative appeal was a failure to exhaust);** *see also Burrell v. Powers*, **431 F.3d 282, 285 (7th Cir. 2006)(failure to take timely appeal in state grievance process is a failure to exhaust).** The undersigned further notes that Plaintiff's time for filing his appeal with the ARB has long since passed. **20 Ill. Admin. Code §504.850(a).** Thus, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies.

### IV. Conclusion

Accordingly, it is **RECOMMENDED** that the Court **FIND** Plaintiff failed to exhaust his administrative remedies because he failed to properly appeal his grievance to the ARB. It is further **RECOMMENDED** that the Court **GRANT** Defendants' Motion for Summary Judgment (Doc. 46) and **DISMISS without prejudice** Plaintiff's claims against Randy J. Davis, Charles Dintelman, Cory Harbison, and Mark Peyton.

Should the Court adopt these findings and recommendations, no further claims will remain against any Defendant and the case may be **DISMISSED without prejudice**.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before <u>**August 19, 2013**</u>.

    **IT IS SO ORDERED**.
    DATED: August 2, 2013.

    */s/ Stephen C. Williams*
    STEPHEN C. WILLIAMS
    United States Magistrate Judge